UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ADONIS H. BENNETT,<br><br>    Plaintiff,<br>    v.<br><br>UNIVERSITY OF WASHINGTON, et al.,<br><br>    Defendants. | CASE NO. C24-1777JLR<br><br>ORDER |

## I.  INTRODUCTION

Before the court is a motion for summary judgment filed by Defendants University of Washington ("UW") President Ana Mari Cauce, Dennis Garberg, John Anderson (together, the "Individual Defendants"), and UW (together with the Individual Defendants, "Defendants").  (Mot. (Dkt. # 14); Reply (Dkt. # 19).)  Plaintiff Adonis H. Bennett, who is proceeding *pro se*, opposes Defendants' motion.  (Resp. (Dkt. # 17).)  The court has considered the parties' submissions, the relevant portions of the record, and

the governing law. Being fully advised,[1] the court GRANTS in part and DENIES in part Defendants' motion for summary judgment.

## II.    BACKGROUND

This case arises from Mr. Bennett's former employment as a Refrigeration Mechanic at UW's Seattle campus. (*See generally* Compl. (Dkt. # 1).) Mr. Bennett, an African-American man over the age of 40, alleges that he was denied a promotion to Lead Refrigeration Mechanic and subjected to a hostile work environment on the basis of his race and age and as retaliation for reaching out to UW's Human Resources Department to inquire about the status of his application. (*Id.* ¶¶ 3, 10, 22; *see* Resp. at 3.) He also asserts that he had no choice but to resign from his position to "protect his psychological and physical health[.]" (Compl. ¶¶ 36-37.)

Mr. Bennett filed this action on October 29, 2024. (*See id.* at 1.) He brings eight causes of action: (1) constructive discharge on the basis of race in violation of 42 U.S.C. § 1983 (*id.* ¶¶ 39-41); (2) retaliation, harassment, and intimidation on the basis of race in violation of § 1983 (*id.* ¶¶ 42-44); (3) conspiracy to create a hostile work environment in violation of 42 U.S.C. § 1985(3) (*id.* ¶¶ 45-46); (4) failure to prevent a conspiracy to harass, retaliate, and discriminate in violation of 42 U.S.C. § 1986 (*id.* ¶¶ 47-49); (5) failure to prevent a conspiracy to create a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 (*id.* ¶¶ 50-52); (6) intentional infliction of emotional distress ("IIED") under Washington state law by creating a hostile work

---

[1] Neither party requests oral argument, and the court finds that oral argument would not be of assistance in resolving Defendants' motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

environment (*id.* ¶¶ 53-55); (7) negligent infliction of emotional distress ("NIED") under Washington state law (*id.* ¶¶ 56-58); and (8) IIED through "extreme, egregious, nefarious, and outrageous" conduct (*id.* ¶¶ 59-64). He seeks an award of economic, compensatory, and punitive damages. (*Id.* at 13.)

Defendants filed their motion for summary judgment on September 5, 2025. (Mot.) Mr. Bennett filed a timely response, and Defendants filed a timely reply. (Resp.; Reply.) The motion is now fully briefed and ripe for decision.

### III.    ANALYSIS

Below, the court sets forth the standard for reviewing motions for summary judgment and then considers Defendants' motion.

**A.    Summary Judgment Standard**

Summary judgment is appropriate if the evidence viewed in the light most favorable to the nonmoving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

To carry their burden, Defendants "must either produce evidence negating an essential element of [Mr. Bennett's] claim or defense or show that [Mr. Bennett] does not have enough evidence of an essential element to carry [his] ultimate burden of persuasion

at trial." *Jones v. Williams*, 791 F.3d 1023, 1030-31 (9th Cir. 2015) (quoting *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)). If Defendants meet their burden of production, the burden then shifts to Mr. Bennett to identify specific facts from which a factfinder could reasonably find in his favor. *Celotex Corp.*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250. "This burden is not a light one." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). A "party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record[.]" Fed. R. Civ. P. 56(c)(1)(A).

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [nonmoving] party[.]" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotations omitted). It may not weigh evidence or make credibility determinations. *Anderson*, 477 U.S. at 249-50. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott*, 550 U.S. at 380 (citation omitted).

**B.  Claims Against President Cauce**

The court begins with Mr. Bennett's claims against President Cauce. Defendants assert that these claims must be dismissed because Mr. Bennett alleges no conduct by President Cauce that could lead to liability. (Mot. at 12.) Mr. Bennett does not respond to this argument. (*See generally* Resp.[2])

---

[2] Mr. Bennett does not address the summary judgment standard in his response. (*See generally* Resp.) Instead, he argues more generally that the court should deny Defendants' motion because his complaint complies with Federal Rule of Civil Procedure

Defendants are correct. Although Mr. Bennett lists President Cauce as a Defendant (*see* Compl. ¶¶ 1, 6, 51-52), he makes no factual allegations about her conduct (*see id.* ¶¶ 10-38) and does not refer to her in his response to Defendants' motion or his supporting declaration (*see generally* Resp.; Bennett Decl. (Dkt. # 18)). Because Mr. Bennett has identified no conduct by President Cauce that could give rise to liability on any of his claims, the court grants Defendants' motion for summary judgment on Mr. Bennett's claims against President Cauce.

**C.    Title VII Claims**

Mr. Bennett alleges that Defendants violated Title VII, by "creat[ing] working conditions so intolerable" that he had to seek counseling; harassing him and retaliating against him on the basis of his race, age, and gender; and failing to protect him from a conspiracy to create a hostile work environment. (Compl. ¶¶ 50-52.) Defendants assert that they are entitled to summary judgment on Mr. Bennett's Title VII claims. The court agrees only in part.

First, the court agrees that dismissal of Mr. Bennett's Title VII claims against the Individual Defendants is warranted because individual employees are not subject to liability under Title VII. *See Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587-88 (9th

---

8(a) and is not, therefore, subject to dismissal for failure to state a claim. (*See* Resp. at 6-7.)  Although the court must liberally construe Mr. Bennett's filings in light of his *pro se* status, *see McGuckin v. Smith*, 974 F.2d 1050, 1055 (9th Cir. 1992), Mr. Bennett must nevertheless follow the same rules of procedure that govern other litigants. *Muñoz v. United States*, 28 F.4th 973, 978 (9th Cir. 2022).

1  Cir. 1993) (holding that individual defendants cannot be held liable for damages under
2  Title VII).

3        Second, the court agrees that Mr. Bennett's Title VII claims for conspiracy and
4  failing to prevent a conspiracy to create a hostile work environment must be dismissed
5  because (1) employees cannot be held liable for conspiracy as long as they are acting
6  within the scope of their employment, and (2) Title VII does not provide a cause of action
7  for failure to prevent conspiracy. (*See* Mot. at 11, 19-20.) Mr. Bennett neither alleges
8  nor provides evidence that Mr. Anderson, Mr. Garberg, or President Cauce acted outside
9  the scope of their employment at any time during the time period relevant to this case.
10 (*See generally* Compl.); *see White v. Pac. Media Grp., Inc.*, 322 F. Supp. 2d 1101,
11 1111-12 (D. Haw. 2004) (finding no liability for conspiracy where defendants were
12 acting within the scope of their employment). Furthermore, Mr. Bennett has not
13 identified any statute or case law authorizing a claim for failure to prevent a conspiracy
14 under Title VII (*see generally* Resp.), and the court has been unable to find any such
15 authority in its own research. Accordingly, the court grants Defendants' motion for
16 summary judgment on Mr. Bennett's claims for conspiracy and failure to prevent
17 conspiracy under Title VII.

18       Third, the court agrees only in part with Defendants' assertion that Mr. Bennett's
19 Title VII claim against UW must be dismissed. Defendants characterize Mr. Bennett's
20 Title VII claim as comprising only a failure to prevent conspiracy claim. (*See* Mot. at
21 19-20.) The court, however, liberally construes Mr. Bennett's complaint as also raising a
22

Title VII hostile work environment claim against UW.[3] *See McGuckin*, 974 F.2d at 1055 (requiring district courts to liberally construe the filings of *pro se* litigants). Specifically, Mr. Bennett alleges:

> By and through the course of conduct herein described, defendant University of Washington and its agents and assigns . . . , acting under the cloak of state law created working conditions so intolerable for Plaintiff who has to seek counseling from mental health profession. The harassment and retaliation, was based solely on Plaintiff's race, age, and gender.

(Compl. ¶ 51.) Defendants do not address Mr. Bennett's hostile work environment claim in their motion for summary judgment. (*See generally* Mot.; Reply.) Therefore, the court concludes that Defendants have not met their initial burden under Rule 56(a) to show "that there is no genuine dispute as to any material fact and [that they are] entitled to judgment as a matter of law" as to Mr. Bennett's Title VII hostile work environment claim against UW. Fed. R. Civ. P. 56(a).[4]

**D.    Section 1983 Claims**

Mr. Bennett alleges that the Individual Defendants violated his civil rights under § 1983 by constructively discharging him and by "retaliating, overtly and covertly harassing, intimidating and ridiculing [him] because of his race." (Compl. ¶¶ 39-44.) Defendants argue that Mr. Bennett's § 1983 claims are barred by qualified immunity

---

[3] A Title VII hostile work environment plaintiff must show (1) that he was "subjected to verbal or physical conduct because of" his membership in a protected class, (2) that the conduct was "unwelcome," and (3) that "the conduct was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment." *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003) (internal quotation marks and citation omitted).

[4] This order does not foreclose Defendants from filing a second motion for summary judgment before the dispositive motions deadline. (*See* Sched. Order (Dkt. # 11) (setting a dispositive motions deadline of February 2, 2026).)

1    because Mr. Bennett failed to identify an established constitutional right or provide

2    evidence of conduct that would violate that right.  (Mot. at 15-16.)

3           To prevail on a § 1983 claim, Mr. Bennett must prove that (1) he suffered a

4    violation of rights protected by the Constitution or created by federal statute and (2) the

5    violation was proximately caused by a person acting under color of state law.  *West v.*

6    *Atkins*, 487 U.S. 42, 48 (1988); *see also Harper v. City of Los Angeles*, 533 F.3d 1010,

7    1026 (9th Cir. 2018) ("In a § 1983 action, the plaintiff must . . . demonstrate that the

8    defendant's conduct was the actionable cause of the claimed injury.").  Qualified

9    immunity protects state actors from liability for damages under § 1983 "insofar as their

10   conduct does not violate clearly established statutory or constitutional rights of which a

11   reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

12   State actors are not, however, entitled to qualified immunity if (1) the facts "[t]aken in the

13   light most favorable to the party asserting the injury" show that "the officer's conduct

14   violated a constitutional right" and (2) "the right was clearly established" at the time of

15   the alleged violation.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on*

16   *other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

17          The court disagrees with Defendants' assertion that Mr. Bennett failed to identify

18   a constitutional right.  The Ninth Circuit has held that the Equal Protection Clause

19   "guarantees state employees 'a clearly established constitutional right' not to 'be refused

20   employment' or face 'adverse alterations of job responsibilities,' among other hostile

21   treatment," because of their race and sex.  *Bala v. Henrikson*, No. 23-35034, 2024 WL

22   546349, at *2 (9th Cir. Feb. 12, 2024) (quoting *Bator v. State of Hawai'i*, 39 F.3d 1021,

1028-29 (9th Cir. 1994)). Because Mr. Bennett contends that Defendants subjected him to harassment and intolerable working conditions because of his race (*see* Compl. ¶¶ 40-44), the court concludes that he has sufficiently articulated a constitutional right.

Nevertheless, the court agrees with Defendants that Mr. Bennett has not met his burden to put forth admissible evidence that any of the Individual Defendants violated that right. In his declaration, Mr. Bennett discusses his training and employment history and describes praise he received from his former supervisor and coworkers. (*See generally* Bennett Decl.) He does not, however, present evidence supporting his claims that the Individual Defendants harassed him on the basis of his race. To the contrary, Mr. Bennett states only that Mr. Anderson began "treating [him] differently and with malice and racial animus" when Mr. Anderson became his supervisor. (*Id.* ¶ 18.) Although Mr. Bennett attached exhibits to his declaration (*see id.* at 6-22), he does not authenticate those exhibits and does not cite them in his response (*see generally id.*; Resp.). See Fed. R. Civ. P. 56(c) (requiring parties to support factual assertions by "citing to particular parts of materials in the record"). And to the extent Mr. Bennett does cite exhibits in his response, his descriptions of those exhibits do not align with the exhibits to his declaration or to the declarations of Mr. Anderson and Mr. Garberg. (*See, e.g.*, Resp. at 2 ¶ 5 (citing "Exhibit # 3 Refrigeration Lead M-F; 6:55am to 3:25pm; Posting date was 4/22/2022, and closing date 5/12/2022").)

Accordingly, the court concludes that Mr. Bennett has not met his burden to identify specific facts from which a factfinder could reasonably conclude that the Individual Defendants violated a clearly established right. *Celotex Corp.*, 477 U.S. at 32;

*see Keenan v. Allan*, 91 F.3d 1275, 1278-79 (9th Cir. 1996) ("We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.") (citation omitted).  Therefore, the court grants Defendants' motion for summary judgment on Mr. Bennett's § 1983 claims.

E.     **Sections 1985(3) and 1986 Conspiracy Claims**

Mr. Bennett alleges that Mr. Garberg and Mr. Anderson conspired to create a hostile work environment, and thus deprive him of his equal protection rights, in violation of § 1985(3).  (Compl. ¶¶ 45-46); *see* 42 U.S.C. § 1985(3) (providing a civil remedy for conspiracy to violate § 1983).  He also alleges that Defendants failed to prevent the conspiracy in violation of § 1986.  (Compl. ¶¶ 47-52); 42 U.S.C. § 1986 (providing a civil remedy for failure to prevent a conspiracy under § 1985(3)).

1.     Section 1985(3) Conspiracy Claim

Defendants argue that Mr. Bennett's § 1985(3) conspiracy claim must be dismissed either under the intracorporate conspiracy doctrine or on the basis of qualified immunity.  (Mot. at 13-16.)  Under the intracorporate conspiracy doctrine, "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy."  *Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017).  The Ninth Circuit has "expressly reserved the question 'whether individual members of a single government entity can form a 'conspiracy' within the meaning of section 1985.'"  *Armstrong v. Reynolds*, 22 F.4th 1058, 1085 n.8 (9th Cir. 2022); *see also Ziglar*, 582 U.S. at 153 (noting a circuit split regarding whether the intracorporate conspiracy doctrine applies to § 1985(3) claims).

1    The court need not decide whether the intracorporate conspiracy doctrine applies
2 in this case because, in light of the Ninth Circuit's reservation of the question and the
3 unresolved split among the circuits, it is not clearly established that a conspiracy between
4 Mr. Anderson and Mr. Garberg to violate Mr. Bennett's civil rights would be unlawful.
5 *Long v. Weeks*, No. 23-55004, 2024 WL 1672258, at *1 (9th Cir. Apr. 18, 2024).  As a
6 result, Mr. Garberg and Mr. Anderson are entitled, as a matter of law, to qualified
7 immunity from Mr. Bennett's § 1985(3) claim.  *Id.*

8    2.    Section 1986 Failure to Prevent Conspiracy Claim

9    Defendants also argue that the court must dismiss Mr. Bennett's § 1986 failure to
10 prevent conspiracy claim because it is barred by the statute of limitations.  (Mot. at 18.)
11 The court agrees.  A one-year statute of limitations applies to claims brought under
12 § 1986.  42 U.S.C. § 1986.  Although Defendants' alleged wrongful acts culminated in
13 Mr. Bennett's resignation from UW on May 3, 2023, Mr. Bennett did not file his
14 complaint until October 29, 2024, more than one year later.  (*See generally* Compl.)
15 Therefore, Mr. Bennett's § 1986 claims are barred by the statute of limitations.

16 **F.    State-law Claims**

17    Mr. Bennett alleges that Defendants intentionally and negligently inflicted
18 emotional distress upon him by subjecting him to a "hostile and discriminatory work
19 environment."  (Compl. ¶¶ 53-64.)  Defendants argue that the court must grant their
20 motion for summary judgment because Mr. Bennett cannot establish the elements of
21 these claims.  Defendants are correct.

22

ORDER - 11

First, to prevail on an IIED claim, the plaintiff must demonstrate " (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress." *Kloepfel v. Bokor*, 66 P.3d 630, 632 (Wash. 2003) (citation omitted). To prove "extreme and outrageous conduct," the plaintiff must show that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citation and internal quotation marks omitted). Mr. Bennett, however, identifies no evidence of "extreme and outrageous" conduct by any Defendant. (*See* Resp. at 7-8 (citing no evidence); *see generally* Bennett Decl.) Accordingly, the court grants Defendants' motion for summary judgment on the IIED claims.

Second, to prevail on an NIED claim, the plaintiff must prove that the defendant had a duty to the plaintiff, that the defendant breached that duty, that the breach proximately caused the plaintiff damage, and that the plaintiff had "objective symptomatology" of distress. *Kloepfel*, 66 P.3d at 633. Employers, however, "do not owe employees a duty to use reasonable care to avoid the inadvertent infliction of emotional distress when responding to workplace disputes." *Snyder v. Med. Serv. Corp. of E. Washington*, 35 P.3d 1158, 1164 (Wash. 2001) (quoting *Bishop v. State*, 77 Wash. App. 228, 233 n.5, 889 P.2d 959 (Wash. Ct. App. 1995)). Here again, Mr. Bennett cites no evidence supporting the elements of his claim. (Resp. at 7-8; *see generally* Bennett Decl.) Therefore, the court grants Defendants' motion for summary judgment on the NIED claim.

**G.     Punitive Damages**

Finally, Defendants move for summary judgment on Mr. Bennett's request for an award of punitive damages. (Mot. at 23; *see* Compl. at 12.) The court grants the motion because, as Defendants point out, punitive damages are not an available remedy for any of Mr. Bennett's claims. (*See* Mot. at 23 (citing *Dailey v. N. Coast Life Ins. Co.*, 919 P.2d 589, 590 (Wash. 1996) (Washington state law claims); *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999) (Title VII claims); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (§ 1983 claims)).) Therefore, the court grants Defendants' motion for a ruling that Mr. Bennett may not seek punitive damages.

## IV.     CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Defendants' motion for summary judgment (Dkt. # 14):

(1)     The court DENIES Defendants' motion for summary judgment as to Mr. Bennett's Title VII hostile work environment claim against UW.

(2)     The court GRANTS Defendants' motion for summary judgment as to Mr. Bennett's claims under 42 U.S.C. §§ 1983, 1985(3), and 1986; Mr. Bennett's Title VII failure to prevent a conspiracy to create a hostile work environment claim; and Mr. Bennett's intentional and negligent infliction of emotional distress claims. These claims are DISMISSED with prejudice.

Dated this <u>3rd</u> day of December, 2025.

JAMES L. ROBART
United States District Judge